```
                                        UNITED STATES DISTRICT COURT
                                        SOUTHERN DISTRICT OF FLORIDA

                                        CASE NO. 14-22683-CIV-GAYLES

                                        MAGISTRATE JUDGE P.A. WHITE

LONNIE D. WILLIAMS,              :

     Petitioner,                 :

v.                               :        REPORT OF
                                          MAGISTRATE JUDGE
STATE OF FLORIDA                 :
DEPT. OF CORRECTIONS,
                                 :
     Respondent.
_____  :
```

## I. Introduction

Lonnie Williams, who is presently confined at the Everglades Correctional Institution at Miami, Florida, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Williams is challenging the revocation of the administrative gain time he received under Florida's prison overcrowding legislation.

This cause has been referred to the undersigned for consideration and report pursuant to Administrative Order 2003-19.

The Court has for its consideration Williams' petition, the Respondent's response to an order to show cause and appendix of exhibits and the petitioner's reply.

## II. Procedural History

Williams came into the custody of the Florida Department of Corrections ("DOC") in 1981 after being sentenced to a term of 99 years for offenses committed on October 1, 1980. Between February 1987 and January 1991 Williams received 720 days of administrative

gain time and 1860 days of provisional credits under legislation designed to reduce prison overcrowding. On May 7, 1993 the provisional credits were cancelled pursuant to an opinion of the Florida Attorney General. On October 28, 1993 the 720 days of administrative gain time were cancelled pursuant to Florida Statute, § 944.278. Since that time Williams has accrued additional gain time.

On September 26, 2013 Williams filed a request with the DOC to restore the cancelled credits. In his request he cited to Lynce v. Mathis, 519 U.S. 433 (1997) and Gomez v. Singletary, 733 So.2d 499 (Fla. 1994). The DOC denied the request because Williams was ineligible for restoration as the credits had been cancelled pursuant to Florida law.

On November 7, 2013 Williams filed a petition for writ of habeas corpus in state court challenging DOC's refusal to restore the credits. (DE# 9-1, p. 10-18). He argued that the cancellation of the credits violated due process and the Ex Post Facto clause. The petition was denied on December 11, 2013. (DE# 9-1, p. 22-31). In denying relief the court provided the following rationale:

> In 1997, the United States Supreme Court issued its opinion in Lynce which held that as to certain inmates, cancellation of overcrowding credits was violative of the Ex Post Facto Clause. Lynce v. Mathis, 519 U.S. 433 (1997). Williams' record was reviewed to determine whether he was entitled to restoration of his Administrative Gain Time and Provisional Credits under Lynce. In Williams' case, it was determined that he was not entitled to restoration of overcrowding credits because his sentence was imposed for an offense committed prior to the enactment of any overcrowding credit statutes. Because he had no entitlement to any overcrowding credits in the first place, cancellation of the credits that were awarded did not violate the *Ex Post Facto* Clause. See Meola v. Dep't. of Corrections, 732 So. 2d 1029 (Fla. 1998) (statute which cancels overcrowding

>credits does not offend ex post facto clause as applied to inmates who offended when there was no overcrowding credit statute in effect). In a later opinion, the Florida Supreme Court set forth a chart classifying inmates into seven Offender Groups (Groups 0-6). It classified inmates whose offenses were committed prior to the effective date of any of the overcrowding statutes (such as petitioner Jones in the Meola opinion) as belonging to Gomez Offender Group 0. All such inmates are entitled to 0 credits. See Appendix to Florida Supreme Court's decision in Winkler v. Moore, 831 So. 2d 63 (Fla. 2002).
>\*\*\*
>Williams is a member of the Gomez Offender Group 0.
>\*\*\*
>Williams also asserts that cancellation of his credits constitutes a taking of his liberty interest without due process of law.
>\*\*\*
>In Meola, the Florida Supreme Court held that inmates who offended prior to the enactment of an overcrowding credit statute had no ex post facto entitlement to retain the credits, *but*, once the credits were awarded, inmates did have a liberty interest in the credits, therefore, the credits could not be cancelled without due process of law. However, the court further held that proper due process was afforded. Relying on Herring [Herring v. Singletary, 879 F.Supp. 1180 (N.D. Fla. 1995);], the Court concluded because credits were canceled by a statute affecting an entire class of individuals, due process was accorded through the legislative process itself[.]
>\*\*\*
>[T]he across-the-board statutory cancellation of early release credits does not violate his due process rights. See Meola at 1036 (finding no due process violation in the cancellation of credits, the court concluded "that the legislature's determination that public security concerns outweigh inmate expectations was reasonable.")

Williams appealed to the Third District Court of Appeal. (DE# 9-1, p. 64).

In his brief he raised the issue of the lower court's denial of his *ex post facto* claim. For the first time he argued that a

3

settlement agreement entered prior to the date he committed his crime should be the relevant date for determining his expectations under an *ex post facto* analysis. Williams did not raise the due process issue on appeal. On April 2, 2014, the appellate court affirmed *per curiam* without written opinion. (DE# 9-2, p. 30). Williams' motion for rehearing (DE# 9-2, p. 32-36) was denied on April 25, 2014. (DE# 9-2, p. 44). Mandate issued on May 14, 2014. Williams' motion for a written opinion (DE# 9-2, p. 48-53) was denied on May 23, 2014. (DE# 9-2, p. 56).

The petitioner filed the instant petition on July 11, 2014. He contends that the state courts erred by failing to find an *ex post facto* violation in the cancellation of 1860 days of accumulated provisional credits. Williams has not addressed the 720 days of administrative gain time that was cancelled.

### III. Statue of Limitations

Since the Petitioner challenges the constitutionality of his confinement, not his conviction, this petition has been properly brought pursuant to Section 2241. See Preiser v. Rodriguez, 411 U.S. 475 (1973); see also Peoples v. Chapman, 393 F.3d 1352, 1353 (11th Cir. 2004). However, it is also governed by and subject to the rules and restrictions found in Section 2254. See Medberry v. Crosby, 351 F.3d 1049 (11th Cir. 2003) (holding that for those imprisoned pursuant to a State court judgment, the habeas corpus remedy is authorized by Section 2241, but also subject to Section 2254 and all of its attendant restrictions); see also Thomas v. Crosby, 371 F.3d 782 (11th Cir. 2004)(reiterating the holding in Medberry and applying it to a petitioner in custody pursuant to a state court judgment who was challenging a decision of the parole board). The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), signed into law on April 24, 1996, amended

the statutes governing federal habeas relief for state prisoners. Because petitioner filed his petition after AEDPA's enactment, its provisions are applicable. See Wilcox v. Fla. Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998). The respondent properly concedes that the petition is timely.

### IV. Discussion

Although the Williams has presented two claims, both claims address the question of whether the cancellation of provisional credits violates the *ex post facto* clause. His second claim is merely an expansion of his argument that the proper starting date to consider whether an *ex post facto* violation occurred predates the crime for which he was convicted and sentenced. As such the two claims will be addressed together.

Williams acknowledges that Lynce is the controlling Supreme Court precedent applicable to his claim. He contends that the Florida court's application of Lynce was error. The basis for his argument is that the February 1, 1980 settlement agreement in Costello v. Wainright, 397 F.Supp. 202 (M.D.Fla.1975) is the proper date to consider for purposes of the *ex post facto* analysis.

In order to address this claim it is necessary to present a history of how Florida dealt with its prison overpopulation. Just such a history was provided by the Florida Supreme Court in Gomez v. Singletary, 733 So.2d 499 (Fla. 1998). There the court noted the following:

> Since the early 1970s, Florida has had a severe prison overcrowding problem which has resulted in the closing of Florida's prison system several times. See Costello v. Wainwright, 397 F.Supp. 20, 22 (M.D.Fla.1975), aff'd 525 F.2d 1239 (5th Cir.1976). In 1980, the Florida Department of Corrections (the Department) entered into a consent decree that provided for the capping of the prison

5

population within certain limits. Id.

As explained below, over the years, the legislature enacted a maze of overcrowding gain time statutes with differing names and requirements. Pursuant to the consent decree in Costello, and as a part of the Correctional Reform Act of 1983, the legislature enacted the Emergency Gain Time statute. See § 944.598, Fla. Stat. (1983). The Emergency Gain Time statute was the first overcrowding gain time statute. It became effective on June 16, 1983. However, under those provisions, the statute did not become operative until prison overcrowding surpassed 98% of lawful capacity (the triggering percentile threshold). Effective June 2, 1986, the triggering percentile threshold was increased to 99% capacity. See ch. 86-46,§§ 1, 3, at 166, 168, Laws of Fla.; § 944.598, Fla. Stat. (Supp.1986).

The Emergency Gain Time statute was superseded by the enactment of the Administrative Gain Time statute. See § 944.276, Fla. Stat. (1987). This statute went into effect on February 5, 1987. See ch. 87-2, §§ 1, 2, 3, at 3-4, Laws of Fla. While the Emergency Gain Time statute technically remained in effect, the Administrative Gain Time statute effectively superseded the Emergency Gain Time statute because the Administrative Gain Time had a triggering percentile threshold of 98%, which was lower than the 99% threshold of the Emergency Gain Time statute. The State never implemented the Emergency Gain Time statute, so no Emergency Gain Time was ever awarded. See Blankenship v. Dugger, 521 So.2d 1097, 1098 (Fla.1988). The Emergency Gain Time statute was repealed effective June 17, 1993. See ch. 93-406, §§ 32, 44, at 2966, 2974, Laws of Fla. (reflected in the Table of Repealed and Transferred Sections (only)-Index at D-97, Fla. Stat. (1993)).

The Department of Corrections (hereafter the Department) made its first overcrowding awards under the Administrative Gain Time statute in February of 1987. It awarded a total of 720 days of Administrative Gain Time to individual prisoners between February of 1987 and June 30, 1988. Effective July 1, 1988, the Administrative Gain Time statute was repealed and the Provisional Credits statute took its place, with a triggering percentile

threshold of 97.5%. See § 944.277, Fla. Stat. (Supp.1988); ch. 88-122,§ 5, at 535-37, 572, Laws of Fla.

The Provisional Credits statute was in effect from July 1, 1988, through June 16, 1993. During this time the Department awarded a total of 1860 days of Provisional Credits to individual prisoners between July 1988 and January 18, 1991. It is very significant that the award of credits under both Administrative Gain Time and Provisional Credits programs was administered pursuant to a computer program without an individual review of inmate records. It proved to be unpopular both with the public and with state officials because several notorious early releasees committed new violent crimes.

In an effort to provide a better, more tailored method of reducing prison overcrowding, the Control Release Program was enacted by the legislature, effective September 1, 1990, with a triggering percentage threshold of 97.5%. See § 947.146, Fla. Stat. (1989); ch. 89-526,§§ 1, 2, 52, at 2659-61, 2690, Laws of Fla. At the same time that the Control Release program was created, the threshold for the Provisional Credits program was increased to 98%. Id. Although Control Release was similar to the Provisional Credits statute because it provided for the award of overcrowding allotments which advanced the inmate's release date, it was different in several respects. First, the Control Release program was administered by the Parole Commission, sitting as the Control Release Authority, rather than the Department. See § 947.146(1), Fla. Stat. (1989). Second, Control Release allotments were not awarded across-the-board to all eligible inmates based a computer program, as was done with the prior programs. Third, even if inmates were statutorily eligible for Control Release consideration, some inmates' release dates were not advanced as allotments were awarded, because they had been assigned a "non-advanceable" control release date. See § 947.146(2), Fla. Stat. (1989); Fla. Admin. Code R. 23-22.006-22.008. The Commission assigned "non-advanceable" control release dates to inmates it considered to be bad release risks to the community, taking into consideration such things as the prior number and type of convictions and prior behavior on supervision, as well as the discretionary consideration of aggravating and/or mitigating factors, including victim input. See § 947.146(5), Fla. Stat.

7

(1989); Fla. Admin. Code R. 23-22.006-22.008. In addition, control release dates could be modified based on new information tending to indicate an inmate's negative or increased release risk prognosis. Moreover, inmate release dates could be extended or advanced, i.e., allotments could be given or taken away, as the prison overcrowding levels changed. See § 947. 146(6), Fla. Stat. (1989); Fla. Admin. Code R. 23-22.010. In sum, while Control Release was similar to the previous programs because it provided for reduced sentences, it was different because it incorporated several of the more discretionary aspects of a traditional parole-type program.3 In many ways, the Control Release program was better than the previous programs because it helped to ensure that only the least dangerous inmates would be released early when prison overcrowding occurred.

On January 18, 1991, the Department stopped awarding overcrowding credits under the 98% triggering threshold of the prior credits program because the Commission was awarding allotments when the 97.5% percentage threshold was reached.

In 1993, the legislature repealed the Provisional Credits statute. See § 944.278, Fla. Stat. (1993)(note 2); ch. 93-406, §§ 32, 44, at 2966, 2974, Laws of Fla. Then, between 1993 and 1995, the legislature progressively increased the percentage threshold for Control Release. In addition, during several periods of time, beginning in 1993, prison overcrowding exceeded all of the prior thresholds. See § 947.146(2), Fla. Stat. (1993); § 947.146(2), Fla. Stat. (Supp.1994).

Gomez at 500-502.

In Lynce the Supreme Court addressed a challenge to the cancellation of these various overcrowding credits on *ex post facto* grounds. In Lynce, unlike the instant case, the petitioner had committed his crime after the 1983 enactment of the first of the overcrowding legislation that provided the credits. As noted by the Court in Lynce, the *Ex Post Facto* Clause is concerned with "the

8

lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Id. at 441. At the time of Williams crime there was no provision for overcrowding credits and he had no expectation of receiving any such credits.

Since Williams had no expectation of receiving the overcrowding credits and the legislature did not increase the punishment beyond what was prescribed on the date he committed his crime, there can be no violation of the *Ex Post Facto* Clause. The issue as identified in Lynce hinges upon legislative action. There is no consideration for the mere possibility that some future action might occur that would change the availability of credits.

The Florida Supreme court has addressed the same issue and found that for prisoners who committed their crimes prior to the enactment of the 1983 legislation addressing prison overcrowding there is no *ex post facto* violation. See Meola v. Dep't. of Corrections, 732 So.2d 1029 (Fla. 1998). In Meola the court applied Lynce and found:

> if an inmate's offense was committed before the overcrowding statute that was enacted in 1983, receipt of the overcrowding credit could not possibly have been contemplated at the time of the offense, and regardless of whether the inmate actually received the benefit later, he would have no *Ex Post Facto* entitlement under the analysis in Lynce.

Id. at 1033. In a later case the Florida Supreme Court set forth a chart in an appendix addressing various offender groups and setting forth the awards of credit for each group. See Winkler v. Moore, 831 So.2d 63 (Fla. 2002). The court again found that inmates who committed their crimes prior to the enactment of the 1983 statute were entitled to no credits under the prison overcrowding

9

legislation.

Williams entire argument hinges on a recognition that the settlement agreement in Costello is the equivalent of legislative action. Under his interpretation of Lynce the mere consideration that there was overcrowding as recognized in the settlement agreement was sufficient to establish that he would be entitled to the credits. However, there is nothing within the Lynce decision that would mandate such a result. Since the application of the *Ex Post Facto* Clause turns upon legislative action, the state court's rejection of the Williams' argument that the settlement agreement should be the triggering event cannot be said to be contrary to, or an unreasonable application of, the Supreme Court's Lynce decision. The petition should be denied.

The respondent has argued there was no due process violation. However, the petitioner has not presented a due process violation in the instant petition. In any event, since that claim was abandoned it would be procedurally barred as he failed to raise it on appeal in state court. See DeWitt v. McDonough, 2006 WL 2850101 (M.D. Fla. Oct. 3, 2006) (petitioner abandoned claim in 3.850 motion by failing to raise it on appeal, and was procedurally barred from review in state court, resulting in procedural default of habeas claims); State v. Mitchell, 719 So. 2d 1245, 1247 (Fla. 1st DCA 1997) (claim raised but not argued in appellate brief considered abandoned).

## IV. Conclusion

It is therefore recommended that this petition for writ of habeas corpus pursuant to Title 28, United States Code Section 2241 be dismissed, or in the alternative denied on the merits, and the

case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 8th day of September, 2015.

UNITED STATES MAGISTRATE JUDGE

cc: Lonnie D. Williams
   DOC# 077359
   Everglades Correctional Institution
   Inmate Mail/Parcels
   1599 SW 187th Avenue
   Miami, FL 33194

   Barbara Debelius
   Florida Department of Corrections
   General Counsel
   501 S. Calhoun St.
   Tallahassee, FL 32399-2500